July 14, 2026

**Supreme Court**
No. 2024-143-M.P.
(WC 22-243)

Thomas Sculco et al.          :

v.                            :

Town of Hopkinton Zoning Board of   :
Review Sitting as the Board of Appeal
et al.

**O R D E R**

The defendant/appellee, RI-95, LLC (RI-95), petitioned this Court for a writ of certiorari to review a Superior Court decision and judgment in favor of the plaintiffs/appellants, Thomas and Cynthia Sculco (the Sculcos). This Court granted the petition and ordered the parties to appear and show cause why the issues raised should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has been shown. Thus, this matter is assigned to the regular calendar for full briefing and argument.

In 1990, a group of developers approached the Hopkinton Town Council (Town Council) with the intention of building a hotel and resort on parcels identified on the Tax Assessor's maps as Plat 11, Lots 47, 47A, 47D, 38, and 39 (the Brae Bern parcels). The developers asked the Town Council to rezone these parcels from RFR (residential) and light industrial into a planned unit development (PUD) zone to

- 1 -

allow their desired uses. At the time, Hopkinton did not have an ordinance that permitted PUD zones, so the Town of Hopkinton Planning Board (Planning Board) suggested that the Town Council deny the rezoning application, establish a PUD ordinance, and instruct the developers to reapply for their project under that ordinance.

Instead, the Town Council opted to amend the Commercial Zone section of the zoning ordinance to create a mixed-use planned development designation as a new permitted use within that zone (the 1990 zoning amendment). This new designation allowed "[m]ixed-use planned development combining any of the permitted uses listed in items 1 through 15 above [i.e., all other uses permitted in Commercial Zone parcels at the time of the amendment] and hotels or motels, conference centers, golf courses, swimming areas, country clubs and central facilities for water distribution and waste treatment." At its meeting on July 2, 1990, the Town Council then rezoned the Brae Bern parcels to this newly created mixed-use planned development designation contained in the zoning amendment and approved the application, subject to restrictions detailed in the Town Council meeting minutes. A relevant restriction, contained within paragraph 11(b) of the minutes from July 2, 1990, stated:

> "The maximum number of structures and the uses in this zone permitted in connection with this project shall be as proposed:

"i. one hotel and one conference center having a combined total of 200 rooms;

"ii. one country club;

"iii. 165 units of residential housing;

"iv. one 18 hole golf course."

Soon after, the developers abandoned the Brae Bern project, although the rezoning remained in place.

In 1994, the Town Council again amended its zoning ordinance and reclassified certain parcels, including the Brae Bern parcels, from the Commercial designation to a newly created "Commercial Special" zone (the 1994 zoning amendment). Parcels under this new designation were subject to any use limitations, restrictions, and conditions previously put in place on those parcels by the Town Council. ("The terms of such limitations, conditions, and/or restrictions shall continue to be applicable to each said property and shall be deemed readopted and incorporated herein.")

In 2011, Hopkinton's building and zoning official asked the assistant town solicitor for an opinion regarding the permitted uses in a Commercial Special district generally and for a specific lot within the Brae Bern parcels (although not the lot at issue here). The assistant solicitor concluded that "the lot can be used (by right or by special use permit) in any manner permitted * * * for lots in a Commercial District unless limited by the Town Council when it amended the Zoning Ordinance in July

- 3 -

1990." Relying on this pronouncement, the zoning official then sent a letter to a developer interested in building on a portion of the Brae Bern parcels, which stated that "the July 2, 1990 Amendment * * * permits not only those uses allowed in a Commercial Zone in 1990 * * * but also the mixed-use planned development as created and defined by the July 2, 1990 Amendment."

In either 2014 or 2016,[1] the Town Council amended the zoning ordinance to allow for photovoltaic solar energy systems (PSES) as a permitted use in commercial zones. The Planning Board approved two solar developments on lots contained within the Brae Bern parcels in 2018 and 2019.

In 2019, RI-95's principal asked town officials for an official determination as to whether solar was a permitted use on the Brae Bern parcels, as he intended to pursue a solar project. In response, the town's zoning official issued a zoning certificate and an amendment in December 2019 specifying that a commercial solar installation was a permitted use for the property.

In March 2020, the then-Hopkinton town solicitors issued a confidential written opinion to the Planning Board about the applicability of the restrictions on the Brae Bern parcels. The town solicitors observed that "a plain reading of Section

---

[1] The Sculcos cite the year the ordinance was amended as 2016, which the trial justice adopted in his decision. RI-95 and Hopkinton maintain that the Town Council first allowed this usage in 2014 but do not point out this discrepancy in any of their filings. No party provided this Court with a copy of the amended ordinance. The precise year of the amendment does not affect our analysis, however.

4 of the [1994] Zoning Ordinance allows for all commercial district uses to apply in a commercial special district, subject to any express limitations, conditions, and/or restrictions as applied to any individual property." They noted that this 1994 amendment incorporates by reference "all permitted uses in a commercial zone," including the sixteenth use—the "mixed-use planned development." The solicitors reasoned that because the Brae Bern parcels were zoned as a Commercial Special district, PSES installations and all other current commercial uses were allowed. They also observed that because of the 2011 interpretations from the assistant solicitor and zoning official, as well as the 2019 zoning certificates, it would be likely that a court would "resolve any ambiguities regarding uses in favor of the landowner under the doctrine of equitable estoppel." As such, they concluded, the Planning Board should interpret the Commercial Special district as permitting all current commercial uses so as to avoid a court challenge that could result in the overruling of its decision.

RI-95 applied to the Planning Board for master plan approval for what became known as the Stone Ridge project several months later. The Planning Board held a series of hearings on the application over the next nine months, with the first public meeting held on October 7, 2020. The Sculcos, whose property abuts the Stone Ridge project property, appeared at the meeting with counsel and formally objected

to the application; they maintained that the rezone of the Brae Bern parcels did not permit large-scale solar projects like what RI-95 had proposed.

The Sculcos also submitted a petition to the Town Council to amend the zoning ordinance to prohibit large-scale solar developments everywhere in the town. On April 6, 2021, the *Westerly Sun* published a letter-to-the-editor from a Hopkinton resident criticizing the Sculcos' proposed solar prohibition amendment and called them "mean-spirited, Johnny-come-lately, yuppy, NIMBYs who seem hell-bent to turn our rural town into snobby suburbs." The letter was posted on Facebook, and Ronald Prellwitz (Mr. Prellwitz), the then-Vice Chair of the Planning Board, commented on the post stating, "Remember, the Sculcos have an agenda, they are land developers." The Sculcos' attorney then sent a letter to the Planning Board's counsel asking for Mr. Prellwitz to be recused or disqualified from considering RI-95's master plan application due to his comment about the Sculcos.

At the next Planning Board hearing on May 5, 2021, the Sculcos again requested that Mr. Prellwitz recuse himself from hearing the application, but the Planning Board chairman left the decision to Mr. Prellwitz. Mr. Prellwitz declined to recuse himself and stated, "My attorney told me if I recuse I would be admitting guilt to something, and I don't think I did anything wrong." At that hearing, the Planning Board voted unanimously in favor of a motion finding that the doctrine of equitable estoppel obligated the Board to find that solar was a lawful use on the

Stone Ridge property. The Board cited the 2011 interpretations, its prior approval of solar projects in 2018 and 2019 on the Brae Bern parcels, and the 2019 zoning certificates issued to RI-95 as evidence of the organization's reliance. After holding two more master plan review hearings, the Planning Board approved RI-95's master plan application on July 21, 2021, by a vote of 3 to 2, with Mr. Prellwitz being one of the votes in favor.

The Sculcos then appealed the Planning Board's decision to the Town of Hopkinton Zoning Board of Review (Zoning Board), sitting as the Board of Appeal, arguing: (1) that the Stone Ridge solar development was not a permitted use under the rezone of the Brae Bern parcels; (2) that it was error for the Planning Board to have concluded that it was bound by equitable estoppel to find that the Stone Ridge project was a permitted use; and (3) that it was error for Mr. Prellwitz to refuse to recuse himself from voting on RI-95's application. After holding several hearings on the appeal, the Zoning Board voted unanimously on June 16, 2022, to uphold the decision of the Planning Board. The Zoning Board concluded that the "Planning Board's determination that the use of the subject parcel as a PSES was a permitted use was reasonable and based on a fair reading of the zoning ordinance." It also opted not to consider the issues of equitable estoppel or Mr. Prellwitz's decision not

to recuse. The Sculcos timely appealed the Zoning Board's decision to the Superior Court.

Before the Superior Court, the Sculcos renewed the assignments of error they presented before the Zoning Board. On April 18, 2024, the trial justice issued a written decision in this case after reviewing the record and the parties' written filings. The trial justice found that the Zoning Board erred in upholding the Planning Board's approval of RI-95's master plan because the proposed solar project was not a permitted use under Hopkinton's zoning scheme. He also found that the Planning Board "lacked both jurisdiction and a sufficient basis upon which to apply equitable estoppel" and that the Zoning Board erred in not correcting the Planning Board's error. Finally, although he expressed concern regarding Mr. Prellwitz's behavior, the trial justice chose not to reach the recusal issue. He entered judgment in favor of the Sculcos, granting their appeal and reversing the Zoning Board's decision upholding the Planning Board's approval of RI-95's master plan application. He also denied RI-95's application itself.

RI-95 filed a petition for writ of certiorari in this Court, presenting two issues for our consideration: (1) "Did the Superior Court err as a matter of law in 'interpreting' the language in the 1990 Zoning Ordinance Amendments beyond its plain and ordinary meaning?" and (2) "Did the Superior Court err as a matter of law in holding that the only circumstance under which equitable estoppel applies in the

land use permitting context is where a building permit has been issued in justifiable reliance—and the expenditure of substantial funds—on existing code/ordinance provisions that then change?" We granted the writ as prayed on November 18, 2024.

After hearing arguments and carefully reviewing the memoranda filed on behalf of the parties, we are of the opinion that cause has been shown and that this case should be assigned to the regular calendar for full briefing and argument. In doing so, we direct the parties to address: (1) the significance of the word "combining" in the first full sentence of the 1990 zoning amendment; and (2) the impact of G.L. 1956 § 45-24-4.1[2] on the meaning of the 1990 zoning amendment. The parties shall address these issues among such other issues as they consider appropriate to decide the appeals before this Court. It is so ordered.

Entered as an Order of this Court this 14th day of July, 2026.

By Order,

_/s/ Meredith A. Benoit_

Clerk

Justice Robinson did not participate.

Justice Goldberg participated in the decision but retired prior to its publication.

---

[2] Although this provision was subsequently repealed, it was in effect at the time the 1990 zoning amendment was passed.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## ORDER COVER SHEET

| | | |
|---|---|---|
| **Title of Case** | Thomas Sculco et al. v. Town of Hopkinton Zoning Board of Review Sitting as the Board of Appeal et al. | |
| **Case Number** | No. 2024-143-M.P.<br>(WC 22-243) | |
| **Date Order Filed** | July 14, 2026 | |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. | |
| **Source of Appeal** | Washington County Superior Court | |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear | |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Stephen J. Sypole, Esq.<br>Peter F. Skwirz, Esq. | |
| | For Defendant:<br><br>William R. Landry, Esq. | |

SU-CMS-02B (revised November 2022)